UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBIN COOPER, individually and as a parent and next friend of M.D., a minor, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:21-CV-72-PPS-JPK |
| SCHOOL CITY OF HAMMOND, *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Robin Cooper is the mother of a disabled child (M.D.), and is frustrated with the level of educational services being provided to him by the School City of Hammond. Cooper has sued the School and its contract psychologist Dr. Julie Steck, and her company, Children's Resource Group ("CRG"). Her claims are brought under the Individuals with Disabilities Education Act ("IDEA") and the Americans with Disabilities Act ("ADA"). Cooper previously completed a ten-day administrative hearing before an Indiana Department of Education hearing officer, who found that M.D. was indeed deprived of a licensed teacher for months. The hearing officer also found that Cooper was not timely provided a copy of the legally required Individualized Education Program, and the school failed to timely and correctly

1

evaluate M.D.'s needs. But the hearing officer also found that M.D. was not entitled to any meaningful remedy other than another meeting with the IEP team.

Unsatisfied with that result, Cooper filed this action seeking a higher level of educational services for her son, as well as a true Independent Educational Evaluation ("IEE"), and monetary damages on the ADA and Rehabilitation Act claims. Pending before me are two motions to dismiss. Dr. Steck and CRG (who I will refer to collectively as "Dr. Steck" unless specificity requires otherwise) move to dismiss all claims against them under Rule 12(b)(6). [DE 27.] Dr. Steck argues she cannot be held liable under the IDEA for failing to ensure M.D. had an IEE, because the IDEA only requires state and local agencies to provide this procedural safeguard, not private individuals like Dr. Steck and her company. Dr. Steck also contends that the ADA claim fails because there is no allegation of causation and, additionally, the ADA applies only to public entities, and she did not directly receive federal funds.

The School also filed a partial motion to dismiss, requesting dismissal only for Issue 1 raised in Count I of the complaint, asserting there is no private cause of action available under the IDEA with respect to teacher licensure. [DE 30.]

**Factual Background**

The facts in this case are largely uncontested and straightforward. As I stated earlier, Cooper is the mother to M.D., a tenth grade student at the School City of Hammond. M.D. has been diagnosed with a number of health issues, including attention deficit hyperactivity disorder, asthma, a generalized anxiety order, a serious language disorder, and a specific learning disability in listening comprehension and

2

math. [Compl., DE 1, at 2.] M.D. scores at the 1st percentile in reading and listening comprehension. *Id.* All parties agree that M.D. is a qualified individual with a disability.

M.D. began first grade in 2012 at the School City of Hammond. *Id.* In November 2014, at Cooper's request, the School initially evaluated M.D. for special education services. [Due Process Hearing Decision, attached to Complaint as Exhibit A, at 13-14.] On February 9, 2015, a Case Conference Committee ("CCC") determined that M.D. was not eligible for special education services in the school. [*Id.* at 14.]

Before the start of the 2018-19 school year, Cooper and M.D. moved to Ohio. While there, M.D. was again evaluated for special education services, and this time, he was determined to be eligible. [*Id.* at 15-17.] Consequently, an IEP was created by the Ohio school district. [*Id.* at 17-18.]

Cooper and M.D. returned to the School City of Hammond for the 2019-20 school year. [*Id.* at 18.] At this point, M.D. was provided special education services by the School—at first under the "move-in" IEP from Ohio, and then under an IEP prepared by the School's CCC, which addressed the remainder of the 2019-20 school year; however, the new IEP was not provided to Cooper until October 16, 2019. [*Id.* at 21-25.] During that school year, M.D. had a special education teacher who was his teacher of record. [*Id.* at 22.] However, she went on medical leave on October 13, 2019, and the substitute teacher was not a licensed special education teacher. *Id.*

Cooper alleges the School failed to timely provide her with a copy of the new IEP, and she alleges other deficiencies with M.D.'s Free Appropriate Public Education

3

("FAPE"), so she filed a request for a due process hearing with the Indiana Department of Education on January 8, 2020. [Compl. at 5.] Around this time, as is well documented, the COVID-19 pandemic hit and the School closed for direct in person educational services; they offered only e-learning, like many other schools across the country. [Ex. A to Compl., at 26.] A Chromebook was delivered to M.D. around March 18, 2020, for his use during the pandemic. [*Id.* at 27.]

Following several requests by the school for M.D. to be reevaluated, which Cooper was initially wary of, she finally agreed to another educational evaluation of M.D. during a resolution session on June 23, 2020. [*Id.* at 26-29.] After receiving Cooper's written consent to perform the evaluation, the School contracted with Dr. Steck and her company (CRG) to conduct the evaluation on its behalf. [*Id.* at 29-30.] Dr. Steck is a psychologist and shareholder in CRG. [Compl. at 3.] CRG's website describes the entity as a multi-specialty behavioral health practice serving children, adolescents, adults, and their families. *Id.* The complaint alleges that Dr. Steck and CRG are a third-party agent or independent contractor for the School City of Hammond. *Id.*

Dr. Steck completed an evaluation of M.D., and she "advised the parent that the testing was being completed as an Independent Education Evaluation (IEE)." *Id.* However, later, Dr. Steck testified as a litigation witness for the School City of Hammond during the due process hearing and indicated that the evaluation she completed of M.D. was not an IEE. [*Id.* at 3, 12.] Ultimately, it was determined that M.D. should remain eligible for special education services and receive various other forms of educational support. [Ex. A to Compl., at 30-33.]

4

Unhappy with that result, Cooper requested and was granted a due process hearing. It turned out to be an extended affair. Although it ran for a total of ten days, it took three months to complete. [*Id.* at 5-6.] Dr. Steck was called to testify multiple times during the course of the hearing. She testified that she failed to notify Cooper about the conflict of interest, even though she admitted she had an ethical duty to notify the parent and to disclose to the parent she had been retained separately to testify for the school district and consult with the School City of Hammond's lawyers. [Compl. at 12.] Cooper wasn't aware that Dr. Steck was consulting with the School and its lawyers until she heard Dr. Steck testify to that effect at the hearing. *Id.*

On January 31, 2021, the independent hearing officer issued his ruling on a number of issues (which he organized into nine major issues), finding the School had deprived M.D. of a free and appropriate education by failing to adequately determine M.D.'s needs for the 2019-20 school year, including his need for speech and language services, depriving him of a properly licensed teacher for months, and violating the procedural safeguards of the IDEA by not timely providing Cooper with a copy of M.D.'s 2019-20 IEP. [Compl. at 1, 6, 9, 12; Ex. A to Compl. at 34-37, 46-47, 48-51.] The complaint alleges that the hearing officer incorrectly concluded that this denial was remedied by Dr. Steck's evaluation, which the hearing officer credited as an IEE. [Compl. at 12-13.]

The hearing officer ruled on a number of issues at the due process hearing. The first issue (which the School moves to dismiss in its partial motion to dismiss), was "did the School fail to provide the Student with properly licensed, certified, qualified and

5

trained special education teachers, including the substitute special education teacher when [M.D.'s] Teacher of Record was on medical leave, and staff pursuant to Article 7 and if so, did this deny [M.D.] a free appropriate public education?" [Compl. at 6-7.] The hearing officer found the School in fact did fail to provide M.D. with a properly licensed and trained special education teacher, including the substitute special education teacher when M.D.'s teacher of record was on medical leave. [Ex. A to Compl., at 34-37.] The hearing officer also found this lack of a licensed teacher of record contributed (along with other failures by the School) to M.D.'s denial of a free and appropriate education. [*Id.* at 34-37, 50-51.]

Cooper alleges that even though the hearing officer found these violations, he improperly excused the violations and found that no remedy of compensatory education was necessary. [Compl. at 9-10, 21.] Cooper goes on to allege that the hearing officer determined "even with this denial of FAPE [regarding Issues 1 and 6 of the underlying due process proceedings], [M.D.] did receive educational services and benefits. . . ." [Ex. A to Compl., at 51.] Plaintiff alleges the hearing officer then created a "new standard" about whether the "errors [were] due to circumstances unlikely to reoccur." [DE 1 at 10.] The hearing officer found that the acts and omissions were not intentional, and more errors due to circumstances like that were unlikely to reoccur. [Ex. A to Compl. at 51.] Cooper also claims that the hearing officer was provided rulings from IDOE explaining that failure to have licensed teachers deprives a child of FAPE and a remedy is warranted; however, the hearing officer "ignored these rulings." [Compl. at 20.]

6

**Discussion**

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Cooper must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Finally, "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the sufficiency of the complaint, not the merits of the case.'" *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

**I.     Dr. Steck's Motion to Dismiss**

Dr. Steck first argues that she and her company are not a state or local educational agency, as required for liability under the IDEA, thus these claims against them must be dismissed. [DE 28 at 8.] In response, Cooper clarifies she is only seeking relief under the IDEA for a violation by the School, and Plaintiff specifically states she

7

did *not* sue Dr. Steck under the IDEA. [DE 44 at 9-10.] So nothing more need be said on the IDEA claim (Count I) as against Dr. Steck.

Count II against Dr. Steck is an ADA claim, and it is a bit murky. As best I can tell, Cooper's contention is that by allegedly misleading her regarding the nature of the September 2020 evaluation, Dr. Steck violated the ADA and section 504 of the Rehabilitation Act. [Compl. at 23.] Dr. Steck sets out two very different reasons why this count should be dismissed: (1) the complaint fails to allege facts that show causation under both of these statutes; and (2) liability under the Rehabilitation Act is premised on being a direct recipient of federal funds, and the complaint fails to allege this. Because the causation argument is dispositive in this case, I need only address this argument.

In her opening brief, Dr. Steck argues the ADA and Rehabilitation Act claims fail because "the Complaint does not set forth facts which plausibly establish that [Steck] . . . discriminated against M.D. *on the basis of his disability*." [DE 28 at 14 (emphasis in original).] Cooper does not directly address this argument in her response, but instead claims that Steck violated Title III of the ADA. [DE 44 at 10-13.] This is still problematic because both Title II and Title III of the ADA contain a causation requirement, as does the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Section 504 of the

8

Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a) (emphasis added).  These two statutes are so similar, that the Seventh Circuit applies "the same analysis to a plaintiff's claim under either one."  *H.P. by and through W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (citing *A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018)).  As the Seventh Circuit has explained, "both statutes prohibit discrimination against individuals 'by reason of' the disability, or 'on the basis of' the disability," and this "language requires [the plaintiff] to prove 'that, but for his disability, he would have been able to access the services or benefits desired."  *H.P.*, 910 F.3d at 960-61 (quoting *A.H.*, 991 F.3d at 593).

The problem here is that Cooper fails to allege but for M.D.'s disabilities, Dr. Steck would have notified Cooper about the true nature of the evaluation of her son. Furthermore, the complaint does not elucidate how, by allegedly becoming the School's "litigation expert rather than continuing in the role of an Independent Educational Evaluator[,]" Dr. Steck discriminated against M.D. on the basis of his disability. [Compl. at 22.]

In response to this argument, Cooper's shift to an analysis under Title III of the ADA is a little confusing, and frankly, doesn't address the causation argument or, for that matter, solve it.  Title III also "by its plain terms" prohibits denial of equal access to services "on the basis of [the petitioner's] disability."  *PGA Tour, Inc. v. Martin*, 532 U.S.

9

661, 662 (2001). The statute states, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Even assuming that CRG is a place of public accommodation, there is still a causation issue. The causation element here must be established by showing that, "but for [his] disability, [the plaintiff] would have been able to access the service or benefits desired." *Bacewic v. Hassel*, No. 2:18-CV-25, 2018 WL 5004723, at *4 (N.D. Ind. Oct. 16, 2018). The Seventh Circuit has stated that to survive dismissal under Title III of the ADA, the plaintiff needs to state that a place of public accommodation "denied services to him because of an alleged disability." *Mohammed v. DuPage Legal Assistance Found.*, 781 F. App'x 551, 52 (7th Cir. 2019). Here, the theory of recovery against Dr. Steck and CRG is confusing (and not elucidated by the briefing), and the complaint does not allege that, but for M.D.'s disability, M.D. would have received the proper IEE, or Cooper would have been properly notified of the nature of the evaluation.

Plaintiff claims that Dr. Steck's "website does not inform or advise unsuspecting parents like Ms. Cooper that being tested by them when the School is paying the bill equates not to an IEE but rather is for litigation to defend the very school district with which the parent disagrees." [DE 44 at 12.] What this has to do with the ADA is a mystery. Here, Cooper has a beef with how the evaluation was completed and, largely, the fact that Dr. Steck failed to disclose that she would become a litigation expert for the

10

School rather than continuing in her role as an Independent Educational Evaluator. But I don't see how this claim fits under the rubric of recovery under either the ADA or the Rehabilitation Act. No causal link has been alleged between this claim about Dr. Steck's behavior and any supposed discrimination against M.D. that he suffered as a result of his disability. As such, dismissal is warranted as to Dr. Steck and CRG on Count II.

However, I do recognize that the Seventh Circuit has instructed when a plaintiff's complaint is dismissed under Rule 12(b)(6), the general rule is to give at least one opportunity to amend the complaint before the action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). Therefore, the dismissal will be without prejudice, and Cooper will be given an opportunity to file an amended complaint if she believes the deficiencies in her complaint that I've just pointed out can be remedied.

## II.     The School's Partial Motion to Dismiss

The School has asked this Court to dismiss just part of the IDEA claim (Issue 1 of Count I) against it, insomuch as Cooper has alleged the School did not provide M.D. with a properly licensed teacher. This relates to Issue 1 determined at the hearing regarding whether the School provided M.G. with a properly licensed teacher, including the substitute special education teacher when M.D.'s teacher of record was on medical leave. The hearing officer found the School failed to provide M.D. with such properly licensed teacher, which resulted in the denial of a free an appropriate education, but also determined that no remedy of compensatory education was

11

necessary. [Compl. Ex. A at 35-37, 50- 51.][1] The hearing officer denied the mother's request for compensatory education, reasoning "since the Student is only a fifteen year old freshman, who has until he is 22 years of age to receive special education and related services and the Student may be entitled to receive Recovery Services due to COVID-19 pursuant to the recent memorandum from the IDOE." [*Id.* at 51.]

The School moves to dismiss Issue 1 in Count I, with respect to teacher licensure, claiming there is no private cause of action available under the IDEA with respect to this issue. The plain language of the IDEA supports this. Paragraph 14 of subsection (a) of 20 U.S.C. § 1412 pertains to personnel qualifications. Subparagraph (c) provides that the State Education Agency (IDOE) establishes and maintains personnel qualifications to ensure that special education teachers have obtained "full State certification as a special education teacher . . . or passed the State special education teacher licensing examination, and holds a license to teach in the State as a special education teacher" and "has not had special education certification or licensure requirements waived on an emergency, temporary, or provisional basis." 20 U.S.C. §

---

[1] Plaintiff filed a response to the partial motion to dismiss, and included references to the administrative record, including testimony and other evidence from the due process hearing which is not in the complaint or the exhibits attached to the complaint. In its reply, the School objected to the submissions outside the scope of the complaint and its exhibits. [DE 53 at 1-2.] Generally, a motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see* Fed. R. Civ. P. 12(d). Query whether it is proper to take judicial notice of everything in the administrative record, which was filed in this case. But I don't need to go down that path (which the parties have not briefed). This motion to dismiss is based upon a matter of law, and the exact details of the teacher licensing issue need not be evaluated at this stage of the litigation in order to rule on this motion to dismiss.

1412(a)(14)(C). However, importantly, at the end of paragraph 14, under the subtitle "rule of construction," the IDEA specifically states:

> Notwithstanding any other individual right of action that a parent or student may maintain under this subchapter, nothing in this paragraph shall be construed to create a right of action on behalf of an individual student for the failure of a particular State educational agency or local educational agency staff person to meet the applicable requirements described in this paragraph, or to prevent a parent from filing a complaint about staff qualifications with the State educational agency as provided for under this subchapter.

20 U.S.C. § 1412(a)(14)(E).

Similarly, Indiana's statute regarding special education program personnel provides the person designated as the teacher of record should "be appropriately licensed or certified" but:

> (j) Notwithstanding any other individual right of action that a parent or student may maintain under this article, nothing in this article shall be construed to:
> (1) create a right of action on behalf of an individual student or class of students for the failure of a public agency employee to meet the requirements described in subsection (a) of the section; or
> (2) prevent a parent from filing a complaint about staff qualifications with the division of special education under 511 IAC 7-45-1.

511 I.A.C. 7-36-2(a), (j).

In response, Cooper oddly cites several provisions from the No Child Left Behind law, which was repealed (Plaintiffs concede in their memorandum that "the NCLB was in effect from 2002-2015 but now is gone."). [DE 45 at 14.] I really don't understand the significance of these repealed provisions. Additionally, Plaintiff also

cites case law for the proposition that when a student is deprived of a properly licensed teacher, that can result in the denial of a free and appropriate education. [DE 45 at 16-17.] But all of the cases she cites are from administrative hearings which may be governed by different rules and remedies. What is clear is that she has no federal cause of action under the applicable statutes both of which plainly state that there is no private right of action for alleged failure to comply with teacher qualifications. While Plaintiffs may file a complaint with the IDOE, there is no private right of action in federal court. Therefore, Issue 1 of Count I of Plaintiff's complaint will be dismissed as to the School.

## Conclusion

For the aforementioned reasons, Defendants Dr. Julie Steck's and Children's Resource Group's Motion to Dismiss [DE 27] is GRANTED IN PART and DENIED IN PART. It is DENIED as MOOT as to Count I (under the IDEA) because Plaintiff has clarified she is only bringing this claim against the School. It is GRANTED as to Count II (under the ADA and Rehabilitation Act) which is DISMISSED WITHOUT PREJUDICE against Defendants Dr. Steck and Children's Resource Group. If the Plaintiffs believe they can address the shortcomings in their complaint against Dr. Steck and CRG, any amended complaint must be filed no later than October 29, 2021.

Defendant School City of Hammond's Motion to Partially Dismiss [DE 30] is GRANTED and Issue 1 in Count I (regarding teacher licensure under the IDEA) is DISMISSED WITH PREJUDICE. The other claims against the School REMAIN PENDING.

**SO ORDERED**.

ENTERED: October 15, 2021

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT