UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROBIN COOPER, individually and as
parent and next friend of M.D., a minor,

Plaintiffs,

v.                                                    CAUSE NO.: 2:21-CV-72-PPS

SCHOOL CITY OF HAMMOND, *et al.*,

Defendants.

OPINION AND ORDER

This case is brought by Robin Cooper, a parent who believes her disabled son

M.D. is not receiving the proper measure of educational services from the School City of

Hammond, Indiana.  The case began with a due process hearing before an Indiana state

independent hearing officer (IHO).  After a ten day hearing, the IHO issued a 53 page

decision which largely found in favor of Hammond and against Ms. Cooper.  Ms.

Cooper, on behalf of her son,  now brings her claims to federal court under both the

Individuals with Disabilities Education Act ("IDEA") and the Americans with

Disabilities Act ("ADA").

This case has languished a bit in part due to several failed attempts at settlement

by the parties.  I held an oral argument on the School's motion for summary judgment

on April 14, 2023, and at the end of it, the parties indicated a willingness to participate

in another settlement conference.  I was hopeful the parties could work out their

differences, especially considering M.D. is entering his senior year of high school.

However, the latest settlement conference held before Magistrate Judge Rodovich on

June 27, 2023 was also unsuccessful, and it is now necessary to rule on the School's motion for summary judgment and other associated motions.

**Factual Background**

At least as it relates to the IDEA claim, I am required to give substantial deference to the factual findings of the IHO. Consequently, the facts detailed below come mostly from the IHO's extensive and well supported findings which are not clearly erroneous. [DE 1-2 at 12-34.]  This factual recitation is occasionally augmented from other sources in the record.

In that regard, as provided by revised Local Rule 56-1, the School relied primarily on the administrative record and the IHO's findings of fact in its Statement of Material Facts. [DE 82.] Cooper responded to the School's statement of material facts by reciting the School's numbered facts, and then countering with whether the issue is disputed or not (citing to evidence in the record). [DE 86-1.]  This document is a whopping 95-pages in length.  *Id.*  It contains extremely detailed facts about M.D.'s health, his schooling team, steps the School took during the COVID-19 epidemic, the specific classes and additional educational services M.D. was given, his evaluations, and his progress (or, as the Cooper argues, lack thereof) during his schooling up to when he was 17 years old at the time of the summary judgment motion.  At bottom, almost all of the supposed genuine issues of facts in dispute identified by plaintiffs are nothing more than a challenge to the findings of fact made by the IHO without a showing that the

2

findings were clearly erroneous.  As a result, I will rely on the IHO's recitation of the facts.

M.D. has been diagnosed with a number of health issues, including attention deficit hyperactivity disorder (ADHD), asthma, a generalized anxiety order, a serious language disorder, and a specific learning disability in listening comprehension and math. [Compl., DE 1, at 2.]  No one disputes that M.D. is a qualified individual with a disability. [DE 86-1 at 1.]

M.D. attended school in Hammond until he moved to Ohio prior to the start of seventh grade. [DE 1-2 at 15.]  M.D. and his mom then moved back to Indiana prior to eighth grade, and he has been enrolled in the Hammond schools ever since. [DE 86-1 at 2-4.]  In November 2014, at Cooper's request, the School initially evaluated M.D. for special education services. [Due Process Hearing Decision, attached to Complaint as Exhibit A, at 13-14.] He was eight years old at the time. [*Id.* at 13.]  M.D. had a history of needing directions repeated to him, being inattentive, doing poorly in his classes with failing grades, absences, and missing assignments.  *Id.*  On February 9, 2015, a Case Conference Committee ("CCC") determined that M.D. was not eligible for special education services at the School. [*Id.* at 14.] However, M.D. continued under a 504 Plan, and when he went to middle school, an Alternative Learning Plan was developed for M.D. [*Id.* at 14-15.]

As noted, prior to the start of the 2018-19 school year, Cooper and M.D. moved to Ohio.  While there, M.D. was again evaluated for special education services.  The school

district in Ohio initially determined that M.D. was not eligible for special education services. [*Id*. at 15-18.]  But after completion of an Independent Educational Evaluation which showed a substantial deficit in a number of areas, the district reconsidered and deemed M.D. eligible for services.  *Id.* Consequently, an Individual Education Plan (or "IEP" for short) was crafted with input from Ms. Cooper. *Id.*

Shortly after finalizing the Ohio IEP, Cooper moved back to Hammond, Indiana and enrolled M.D. back in the Hammond schools for the 2019-20 school year.  [*Id.* at 18.]  At this point, M.D. was provided special education services by the School—at first under the "move-in" IEP from Ohio, and then under an IEP prepared by the School's Case Conference Committee. This IEP addressed the remainder of the 2019-20 school year; however, the new IEP was not provided to Cooper until October 16, 2019.  [*Id.* at 21-25.]  During that school year, M.D. had a special education teacher who was his teacher of record ("TOR"). [*Id.* at 22.]  However, she went on medical leave on October 13, 2019, and the substitute teacher was not a licensed special education teacher.  *Id.*

Cooper claims the School failed to timely provide her with a copy of the new IEP, and she alleges other deficiencies with M.D.'s free appropriate public education ("FAPE"), so she filed a request for a due process hearing with the Indiana Department of Education on January 8, 2020. [Compl. at 5.]  Around this time, the COVID-19 pandemic hit and the School closed for direct in-person educational services; they offered only e-learning, like many other schools across the country. [DE 1-2, at 26.]

Following several requests by the school for M.D. to be reevaluated, which Cooper was initially wary of, she finally agreed to another educational evaluation of M.D. during a resolution session on June 23, 2020.  [*Id.* at 26-29.]  The evaluation revealed that M.D.'s "overall language abilities fell in the very low to extremely low range" and that he was "easily overwhelmed by too much spoken language[.]" [*Id* at 32.]  Ultimately, it was determined by the third party evaluator that M.D. should remain eligible for special education services and receive various other forms of educational support. [*Id.* at 30-33.]  For example, it was recommended that M.D. be considered a student with an Other Health Impairment, Specific Learning Disability (math and listening comprehension), Language Impairment, and that he receive one on one language services from the school for 40-45 minutes per week. [*Id.* at 31-32.]  Other accommodations were to provide M.D. with a written copy of any material presented in lecture-format, give no more than two steps at a time when providing oral direction, check for comprehension, prompting, redirect, graph organizer, chunk assignments, and repeat directions. [*Id.* at 32-33.]

Unhappy with the results of the reevaluation, Cooper requested and was granted a due process hearing.  Although the hearing ran for a total of ten days, due to scheduling issues, it took three months to complete. [DE 1-2 at 1.] On January 31, 2021, the Indiana Department of Education Independent Hearing Officer issued his ruling (which he organized into nine major issues).

As previously stated, Cooper sets forth two claims in her complaint - one under the IDEA and one under the ADA.  With regard to the IDEA claim, the central issue before the IHO was whether M.D.'s September 2019 and December 2019 IEPs met the School's duty to provide M.D. with a FAPE.  Cooper claims the IHO erred as a matter of law in failing to provide M.D. an appropriate remedy as to Issues 6 and 8, and the procedural findings. [DE 1 at 9-13.]  She also alleges that the School denied M.D. a FAPE because the IHO erred factually and legally in deciding issues 2, 3, 4, 5, and 7. [*Id.* at 13-17.]  Lastly, Cooper alleges the administrative hearing was a "violation of fair due process" because the hearing was conducted "in a manner inconsistent with the IDEA and with fundamental fairness and due process." [*Id.* at 18-21.]  Under the IDEA, Cooper seeks an independent educational evaluation as well as additional speech and language services, direct reading, writing and math services, and direct instruction in transition areas and related services in the area of counseling and parent training. [*Id.* at 24.]

Count II of Cooper's complaint seeks relief under the ADA and Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794(a), and requests monetary damages. [*Id.* at 22-24.]  Cooper tries to elucidate the ADA claim in her response to the motion for summary judgment; however, a recurring problem is that she often conflates the IDEA with the ADA.  In her response, Cooper argues the School violated the ADA and Section 504 in 4 ways: *first*, the school denied M.D. a licensed teacher; *second*, the school refused to allow M.D. to switch to a non-Core 40 diploma track; *third*, the School failed

to timely identify M.D.'s needs; and *fourth*, the School denied M.D. a FAPE. [DE 86 at 17.]

The School filed a motion for summary judgment [DE 81] arguing that as to Count I, under the Administrative Record filed with the Court, the IHO's decision, which is entitled to deference, is supported by evidence in the record and should be affirmed.  For Count II, the School claims there are no genuine issues of material facts in dispute and it is entitled to judgment as a matter of law regarding the ADA, Section 504, and due process violations.

There are also several other pending motions.  Cooper filed a motion to offer as additional evidence Cooper's affidavit (to show that M.D. did not attend first grade at the School and reflecting M.D.'s current grades). [DE 87.]  The School filed a motion to strike Cooper's surreply in support of summary judgment dated February 10, 2023, which was filed without asking leave of the Court first. [DE 98.]  These will be dealt with below.

<u>Discussion</u>

## I.      IDEA (Count I)

### A.      Background of IDEA

IDEA is a federal statute designed to assist disabled children with navigating the educational experience in public schools in the United States.  Boiled down to its essence, the IDEA offers federal funds to states in exchange for a commitment to provide a "free appropriate public education" — commonly shortened to "FAPE" — to

all children with certain physical and intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(I).

Under the Act, a student's IEP is the "primary vehicle" for providing the free appropriate education with the IEP being personalized to meet a child's educational needs, which documents the student's "levels of academic achievement," specifies "measurable annual goals" to "make progress in the general education curriculum," and lists "special education and related services" the child needs to "advance appropriately toward [those] goals." 20 U.S.C. § 1414(d); *Honig v. Doe*, 484 U.S. 305, 311 (1988).

In *Board of Educ. v. Rowley*, 458 U.S. 176 (1982), the Supreme Court explored the role of federal courts in reviewing action by state and local officials in the IDEA context. The Court cautioned that federal judges "must be careful to avoid imposing their view of preferable educational methods upon the states." *Id.* at 207.  This is because the "primary responsibility" for formulating the educational plan for children with disabilities is "state and local educational agencies in cooperation with parents[.]" *Id.* A district court's role is simply to ask "whether the IEP is reasonably calculated to enable the child to receive an educational benefit and whether the district complied with the proper procedures for drafting the IEP." *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 801-02 (7th Cir. 2004) (citing *Rowley*).

### B.    Additional Evidence Under the IDEA Claim

Summary judgment in an IDEA case is different than the mine run of cases.

*Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997).  This is because

district courts sit as courts of review in the IDEA context.  It is true that the IDEA states

that district courts "shall hear additional evidence at the request of a party[.]" 20 U.S.C.

§ 1415(i)(2)(C)(i-iii) (emphasis added). But notwithstanding the "shall hear additional

evidence" language, appellate courts have construed the statute to provide district

courts with discretion to determine whether to hear such evidence.  *See, e.g., Walker*

*Cnty. Sch. Dist. v. Bennett*, 203 F.3d 1293, 1298-99 (11th Cir. 2000) (discussing circuit

court decisions); *Bd. Of Educ. Of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270

(7th Cir. 2007) (finding district courts have discretion to admit additional evidence to

supplement the records).

A "district court is not required to allow all evidence proffered by a plaintiff in

an IDEA proceeding."  *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir.

1996); *see also Patricia P. v. Bd. Of Educ. of Oak Park*, 203 F.3d 462, 470 (7th Cir. 2000)

(finding court has discretion to determine whether to allow evidence beyond the

administrative record, so long as the evidence would not change the character of the

hearing from one of review to a trial de novo).  One court has noted that "district courts

are cautioned to not receive additional evidence beyond the administrative record

absent a strong justification for failure to present such evidence at the administrative

level." *H.H. ex rel Hough v. Indiana Bd. Of Special Educ.*, No. 3:06-CV-551 TLS, 2007 WL 2914461, at *2 (N.D. Ind. Oct. 3, 2007) (citing *Monticello*, 102 F.3d at 901-02).

In this case, Plaintiffs have moved for the court to consider additional evidence. [DE 87.]  Specifically, Cooper has offered an affidavit clarifying that M.D. did not attend the School in first grade and providing M.D.'s grades for 9th-11th grade.  The affidavit also explains that Cooper does not currently know what IEP is in place for M.D. [DE 87-1.]  The School opposes the consideration of this new evidence, arguing it should be stricken as evidence outside the administrative record. [DE 92 at 3-6.]

Here's how one court summarized when additional evidence in IDEA proceedings should be allowed:

> a court should receive additional evidence at the judicial review stage of an IDEA proceeding only if the movant provides a particularized and compelling justification for doing so.  This showing should include an explanation both as to why the evidence was not presented at the administrative level and why it is probative of the issues before the court.  Valid reasons for presenting supplemental evidence might include gaps in the hearing transcript owing to mechanical failure, the unavoidable absence at the hearing of an important witness, or the improper exclusion of relevant evidence by the hearing officer.

*Konkel v. Elmbrook Sch. Dist.*, 348 F.Supp.2d 1018, 1022 (E.D. Wis. 2004) (internal citations omitted).  I think this approach is sensible.  And here, I don't see a particularized need for me to review this additional evidence.  For starters, M.D. was afforded a full opportunity to present all evidence before the IHO.  And this wasn't some slapdash, perfunctory hearing.  It lasted *ten days.*  There are thousands of pages of transcripts, and

hundreds of exhibits. What's more, I'm sensitive to the admonition that a district court should "be careful" not to allow additional evidence when it would "change the character of the hearing from one of review to a trial *de novo*." *Monticello*, 102 F.3d at 901. Given the breadth of the hearing before the IHO and due to concern of turning my review into a *de novo* one, I decline to consider the additional evidence outside of the administrative record in this case as to the IDEA claim.

### C.    IDEA Standard of Review

In terms of judicial review of an IHO's decision, the IDEA provides that: "[i]n any action brought under this paragraph, the court — (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party [which I have declined to do in this case]; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c).

Since I am not hearing additional evidence, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S.*, 125 F.3d at 1052. The Seventh Circuit has explained the standard of review in IDEA cases as sort of a sliding scale, with a more exhaustive review necessary the greater the amount of new evidence submitted to the court. *Sch. Dist. Of Wis. Dells v. Z.S.*, 295 F.3d 671, 675 (7th Cir. 2002). "When no fresh evidence is taken, 'the fact that [the district judge] disagrees with the [administrative law judge or other administrative hearing] officer is not enough to justify setting aside

11

the latter's order; he must be strongly convinced the order is erroneous.'" *Id.* at 675 (quoting *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 237 F.3d 813, 815-16 (7th Cir. 2001)).  In other words, substantial deference is due to the hearing officer in this case.  What this means is that, although legal issues are reviewed de novo, *M.B. v. Hamilton Se. Schs.*, 668 F.3d 851, 859 (7th Cir. 2011), on issues of fact, I shouldn't "substitute [my] own notions of sound educational policy for those of the school authorities."  *Heather S.*, 125 F.3d at 1053. "This level of review is akin to the standards of clear error or substantial evidence."  *Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221*, 375 F.3d 603, 611-12 (7th Cir. 2004).

To sum up: In evaluating a motion for summary judgment in the IDEA context, I owe considerable deference to the hearing officer and may set aside the administrative order only if I am "strongly convinced that the order is erroneous."  *Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. #221*, 375 F.3d 603, 611 (7th Cir. 2004).  Put another way, I cannot "substitute [my] own notions of sound educational policy for those of the school authorities which they review." *Stanley C.*, 628 F.Supp.2d at 920-21 .

### D.    IDEA Substantive Arguments

Cooper challenges various aspects of the IHO's decision, arguing he wrongly decided many key issues including: 1) whether the remedies provided by the IHO as to issues 6 and 8 were appropriate, 2) whether the IHO properly decided issues 2, 3, 4, 5, and 7, and 3) whether the due process hearing was conducted in accordance with the IDEA and general fundamentals of fairness and due process.

12

Before turning to the issues, it's worth noting what remedies are (and are not) available under the IDEA.  Unhelpfully, the statute simply says that an IHO may "grant such relief as . . . is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  Courts have interpreted this vague phrase to mean that compensatory damages are unavailable under the IDEA; but a hearing officer can order a "compensatory education."  *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68,* 98 F.3d 989, 991 (7th Cir. 1996), *abrogated in part on other grounds by Fry v. Napoleon Cmty. Sch.,* 580 U.S. 154 ( 2017)*; Indep. Sch. Dist. No. 283 v. E.M. D.H.,* 960 F.3d 1073, 1084 (8th Cir. 2020), *cert denied*, 142 S. Ct. 67 (2021).  Any relief that is ordered must be "designed to ensure that the student is appropriately educated within the meaning of the IDEA."  *Parents of Student W. v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994).  The remedial goal is "to place disabled children in the same position they would have occupied but for the school district's violations of the IDEA."  *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005).

With that background in mind, let's turn to the issues addressed by the IHO.  I'll start with the two issues M.D. prevailed on before turning to the issues he lost on.

**Issue 6**

The IHO found in favor of Cooper on Issue 6—that the School failed to timely provide Cooper with a copy of M.D.'s IEP (twice, from September 4, 2019 through October 15, 2019, and from December 2, 2019 to January 9, 2020[1]), but found:

---

[1] Although the IHO opinion states the second window of failing to provide M.D.'s parent with an IEP was from December 2, 2019 through January 9, 2019, this last date is clearly an error.  The parties confirmed during the oral argument that the denial was about three weeks, between December and early

13

even with this denial of FAPE, the Student did receive educational services and benefits and the acts or omissions were not intentional, more errors due to circumstances unlikely to reoccur.  Therefore, the mother's request for compensatory education for the Student is denied, since the Student is only a fifteen year old freshman, who has until he is 22 years of age to receive special education and related services and the Student may be entitled to receive Recovery Services due to COVID-19 pursuant to the recent memorandum from the IDOE.

[DE 1-2 at 50-51.]

Obviously, no one should applaud the fact that Cooper was not provided a copy of the appropriate IEP on two occasions, for a combined time period of a little over 2 months.  But the IHO found that there were some mitigating facts—the IEP was delayed after the September 4, 2019 move-in CCC meeting because the school was implementing a new student information system which had a glitch and did not interact with the Indiana IEP program. [*Id.* at 46.] And for the second occurrence, the responsible person was on jury duty, and then it was the holidays, and they simply forgot to finalize and mail the IEP. [*Id.* at 47.]  Under these circumstances, the IHO decided that a remedy was neither necessary nor "appropriate" under the IDEA.  20 U.S.C. § 1415(i)(2)(C)(iii).

I think this decision was entirely reasonable. First, the violation was a procedural one—failing to timely provide M.D.'s mother with a written copy of the IEP over a 2 month period of time.  As the IHO noted, the violation was simply an inadvertent omission that would hopefully not occur again. [DE 1-2 at 51.] The IHO pointed out that

_____

January, when someone was on vacation. [DE 106 at 17.]

M.D. had additional time left in the school, and that he might be entitled to receive recovery services due to COVID-19.  While one would expect the School to do better, in the end, this was a somewhat trifling procedural violation.  And more to the point, sometimes, a healthy dose of pragmatism is needed.  The IHO's decision came more than a year after the violation.  Given this context, it was within the IHO's discretion to simply note the violation but not provide a remedy.  After all, how exactly was the IHO supposed to order appropriate relief to Cooper for not having received a written IEP a year earlier?

The IHO's decision is consistent with what the Seventh Circuit has acknowledged: "Not every violation, of course, warrants compensatory relief." *Evanston Cmty. Consol. Sch. Dist. Number 65 v. Michael M.*, 356 F.3d 798, 803 (7th Cir. 2004); *see also M.O. v. Duneland Sch. Corp.*, No. 2:07-CV-175-TLS, at *3 (N.D. Ind. Oct. 29, 2009) (citing to *Evanston Community*). This is because for a court to consider a remedy, the alleged violation must be more than "procedural." *Id.*

As I stated, I'm not sure what type of remedy would put M.D. and his mother in the position of having the written IEPs for those few months.  And I note that Cooper has not suggested any appropriate relief (indeed, she did not address this argument at all in her response to the School's motion for summary judgment).  The IHO specifically determined that the education and related services M.D. received were proper even though Cooper was not timely provided a written IEP. [DE 1-2 at 51.]  We can't go back

in time and timely hand her the IEP.  Therefore, I agree with the IHO's decision to not grant a remedy for this violation.

**<u>Issue 8</u>**

M.D. also prevailed in part on Issue 8 which involves whether the School offered and provided M.D. with proper evaluations and if not, whether that failure denied M.D. a FAPE.  The IHO found that prior to the evaluation in September 2020, the School failed to provide M.D. with evaluations for Occupational Therapy, Autism Spectrum Disorder, Assistive Technology, Speech/Language/Communications and Parent Counseling and Training.  But the IHO also pointed out that these evaluations were not "requested by the mother nor needed for the School to provide services." [DE 1-2 at 49.] At some point in time the School determined that these evaluations might be helpful; but when the School asked for Cooper's permission to conduct them in February and April 2020 she rebuffed them.  *Id.*  Eventually, Ms. Cooper did consent to an evaluation verbally on June 23, 2020, and then gave written consent to the evaluation on July 17, 2020.  M.D. was then fully evaluated a short time later by Dr. Julie Steck.  *Id.*

Once again, Cooper does not address this argument in her response to the motion for summary judgment.  Plus the School makes the point that Cooper did not set forth these claims in the administrative record (however she has previously argued during this case that Dr. Steck's evaluation was biased and not made by an independent educational evaluator). [DE 83 at 9.]  "An evaluation's primary role is to contribute to the development of a sound IEP" and there is no evidence here that the testing did not

ultimately assist the School in crafting an appropriate education for M.D.  The IHO

noted that once the mother consented to the evaluation in 2020, Autism Spectrum

Disorder was ruled out, and additional Assistive Technology, and Parent Counseling

and Training were found not to be needed. [DE 1-2 at 50.]

On that latter finding, the IHO was skeptical that parent counseling was

necessary in this situation.  Cooper has a Master's Degree in Education and is licensed

to teach Special Education in the Mild Disabilities, which she did for more than a

decade in a neighboring school district.  [*Id.* at 49.]  The IHO noted "[i]t [was] difficult to

imagine what parent counseling or training the School could provide to such an

educated and trained individual." *Id.*

Given that these arguments are not controverted by Cooper in the briefing for

this motion, the IHO's decision not to grant any remedy for the School's failure to

provide M.D. with evaluations for certain issues before September 2020 was properly

denied.  Those evaluations were not requested, and when Cooper did finally consent to

some evaluations, which eventually occurred, they were properly conducted.

<u>Issue 2</u>

The IHO determined the remaining issues against Cooper.[2]  Issue 2 dealt with

whether the School failed to timely provide M.D. with comparable special education

and related services as set forth in M.D.'s move-in IEP from August 27, 2019 through

---

[2] Any discussion of Issue 1 dealing with the School's failure to provide M.D. with a licensed
special teacher is omitted here because it was disposed of on a motion to dismiss. *See* DE 60 at 11-15.

September 2019, when M.D.'s Indiana IEP was finalized.  [DE 1-2 at 37.]  The IHO answered this question in the negative.  He pointed out the Ohio IEP was signed by Cooper on August 16, 2019, the September 4, 2019 CCC meeting was timely held, and after that meeting M.D.'s teacher of record provided and oversaw that the new Indiana IEP, although not yet in writing, was being followed. [*Id.* at 39.]

Although Cooper argues in her brief that because no written IEP was in place the first day of school, this necessarily means M.D. was not provided with comparable special education and related services [DE 86 at 22], I don't think this is a necessary conclusion.  Clearly the School was working with M.D. and his mother at this stage, and even though the Indiana IEP was not in writing those first few weeks, the IHO listened to evidence and decided that Cooper had not shown by a preponderance of the evidence that the School failed to timely provide M.D. with comparable special education and related services as set forth in M.D.'s move-in IEP from August 27, 2019, through September 2019, when M.D.'s Indiana IEP was finalized.  I don't think the IHO made any error in law or fact on this issue.

<u>Issue 3</u>

Issue 3 related to whether the School had developed appropriate IEPs that were reasonably calculated to provide a meaningful benefit to M.D.?  The IHO answered that question in the affirmative.  He found that the School *did* develop appropriate IEPs, containing suitable services and accommodations for M.D. that were reasonably

18

calculated to provide meaningful education benefits and enable M.D. to make progress appropriate in light of the circumstances. [DE 1-2 at 39-40.]

The IDEA requires that every IEP include "a statement of the child's present levels of academic achievement and functional performance," describe "how the child's disability affects the child's involvement and progress in the general education curriculum," and set out "measurable annual goals, including academic and functional goals," along with a "description of how the child's progress toward meeting" those goals will be gauged. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III). The IEP must also describe the "special education and related services . . . that will be provided" so that the child may "advance appropriately toward attaining the annual goals" and, when possible, be involved in and make progress in the general education curriculum." § 1414(d)(1)(A)(i)(IV).

What services are provided for in an IEP will obviously vary quite a bit from student to student; however, to meet the substantive requirements of the IDEA, an IEP must be "reasonably calculated to enable a child to make progress adequate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988, 999 (2017). Note that the Supreme Court has rejected the argument that a FAPE must provide a disabled child with the opportunity to "achieve academic success, attain self-sufficiency, and contribute to society that are substantially equal to the opportunities afforded children without disabilities." *Id.* at 1001.

19

Here 's what the IHO said regarding the issue of whether the School developed
an appropriate IEP for M.D.:

> [T]he IEPs recognized the Student's disabilities, strengths,
> and weaknesses and set out a mixture of general education
> and special education services specifically designed to
> address the Student's weaknesses in reading and in math
> and later Work Completion.  As the law states, an IEP can
> only be a "snapshot in time" and can only be based on
> information available to the School when the IEP is devised.
> As to the September move-in IEP, the School had limited
> information regarding the Student when he enrolled for the
> eighth grade and the move-in IEP was drafted.  The IEP
> devised in December, 2019 was appropriate considering the
> additional information the School had obtained, through
> educating the Student for three months.  The IEP devised in
> May, 2020 was appropriate considering the additional
> information the School had obtained through educating the
> Student an additional five months even with the effects of
> COVID-19 on schools and children.  While the Petitioner
> may isolate items in the IEPs that the Petitioner now
> disagrees with or contends were not ideal, the law does not
> require IEPs to be perfect, nor does it require the School to
> educate the Student to his highest potential.  Therefore, the
> preponderance of the evidence established that the
> Petitioner did not meet the Petitioner's burden of proof to
> show that the School failed to develop IEPs that met the
> standard set out in *Endrew F.*  The IEPs were reasonably
> calculated to enable the Student to make progress
> appropriate in light of the child's circumstances.

[DE 1-2 at 42-43.] This analysis comports with the law—the IHO applied the correct

legal standards, and I cannot say that I am strongly convinced it is erroneous as to the

facts.  To the contrary—I quite agree with the IHO's conclusion here.

The level of minutiae Cooper has gone into now, about how these IEPs years

earlier were inappropriate, is a little staggering. [*See* DE 86 at 23-28.] As the IHO

correctly recounted, an IEP is a snapshot, not a retrospective document, and it must take into account what was objectively reasonable at the time the snapshot was taken (or when the IEP was promulgated). *See Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 530 (3rd Cir. 1995). The measure and adequacy of an IEP can only be determined at the time it is offered to the student, not at a later date – "Monday Morning quarter backing" is inappropriate. *Fuhrmann v. East Hanover Bd. Of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993). Given what the School reasonably should have known about M.D.'s needs at the time these IEPs were created, I agree with the IHO's opinion that they were appropriately developed IEPs.

**Issue 4**

For this topic, the IHO determined the School was not required to conduct an evaluation, or reevaluation, of M.D. prior to removing any direct special education services or accommodations from his move-in IEP pursuant to 511 IAC 7-40-3 and 511 IAC 7-42-8(f). [DE 1-2 at 43.]

The IHO found that M.D. had been evaluated twice in Ohio within the 9 months before the School's September 4, 2019 CCC meeting, and the Indiana IEP "attempted, if it did not, to incorporate all of the accommodations listed in the Ohio IEP into his Indiana IEP." [*Id.* at 43-44.] He further noted, there was no dispute regarding the CCC's decision about M.D.'s eligibility, the only argument was whether "the School should have reevaluated the Student again." [*Id.* at 44.] When M.D. enrolled, the School had the benefit of the two recent prior Ohio evaluations, and there was no request from

Cooper to conduct another reevaluation of M.D. *Id.* Although 511 IAC § 7-40-4(b) requires schools to initiate an education evaluation when students with specific learning disabilities have not progressed after an appropriate period of time, and 511 IAC § 7-40-8 requires a public agency ensure a reevaluation of a child with a disability is conducted if it determines the education or related services needs of the student warrants a reevaluation, the IHO correctly concluded neither of those provisions were applicable in this case. *Id.* Again, I find no error in the IHO's application of the law or determination of the facts.

### **Issue 5**

For Issue 5, the IHO determined the School did not fail to provide M.D. with a Chromebook in a timely manner for home use. [DE 1-2 at 44-45.] M.D. did have a Chromebook to use at the School, and the IHO explained that the Ohio plan did not specifically provide that he should have another Chromebook for use at home. What's more, the School's principal actually delivered a Chromebook to M.D. at his residence on or about March 18, 2020 (during the start of the COVID-19 pandemic when the school buildings closed and the School turned to e-learning). The IHO concluded that before that, "[t]here was nothing discussing, requiring or allowing the Student to take a Chromebook home or have one for his use at home. There was no mention anywhere in this IEP concerning an extra set of instructional materials for home use." [*Id.* at 45-46.]

Cooper simply argues that if the Ohio report was vague about the use of a Chromebook at home, the School was required to evaluate the situation. [DE 86 at 30.] I

don't think this singular argument is enough to overturn the IHO's opinion, after hearing days of testimony, that the School timely provided M.D. with a Chromebook for home use.

**Issue 7**

Issue 7 presented to the IHO was whether the School provided M.D. with an age appropriate transition assessment and transition plan; and if not, did the failure deny M.D. a FAPE? [DE 1-2 at 47.]  The IHO found the School did provide M.D. with an age appropriate transition assessment and transition plan.  Although Cooper claims the IHO legally erred on this determination, he correctly cited 511 IAC § 7-43-4 which provides the CCC must develop a transition IEP that will be in effect when the student either enters into grade 9 or becomes 14 years of age, whichever occurs first. [*Id.* at 48.] On November 21, 2019, M.D. had been given the O*Net Interest Profiler Career Starter, which is a common transition assessment tool, and Cooper had completed the Independent Living Postsecondary Goal Worksheet in August 2019 as part of the Ohio IEP.  *Id.*  The IHO found based on the two assessments and the input of the participants, "the transition plan and goal were appropriate."  *Id.*  Again, I find no legal error, and in giving due weight to the IHO's factual determinations, affirm his determination.

**Alleged Due Process Violations**

Although it is not delineated as a separate count in the complaint, Cooper nonetheless alleges in her briefing that the hearing before the IHO was fundamentally unfair, and therefore violated due process and should be reversed as a result. [DE 86 at

32.]  The hallmark of due process is its flexibility.  *Doyle v. Camelot Care Centers, Inc.* 305

F.3d 603, 618 (7th Cir. 2002).  The type of process that is due depends on the

circumstances.  *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  Under any conception of

the due process clause it's a little hard to imagine a more fulsome hearing than the one

provided to M.D.  Recall that the hearing spanned ten days, involved many witness,

allowed for extensive cross-examination, and hundreds of exhibits were admitted

resulting in a transcript covering well over a thousand pages.  To say the least, it's a

stretch to suggest that such a hearing doesn't comport with the due process clause.

Cooper nitpicks a couple specific points relating to how the hearing was

conducted.  She starts by citing to the requirement in the IDEA that all

recommendations are to be provided to the other party at least five days before the

hearing, 34 C.F.R. § 300.512(a)(3) and (b); 511 IAC § 7-45-7(h), and claims a number of

witnesses did not produce their recommendations more than five days before the

hearing. [DE 86 at 32.]  While it is true these statutes require at least 5 business days

prior to the hearing, each party shall disclose to all other parties all evaluations

completed by that date and recommendations the party intends to use at the hearing,

Cooper has cited no case law that violation of such a law results in a deprivation of due

process.

But even more to the point, the School rightly observes that Cooper makes no

citation to the administrative record wherein she ever objected to any such evidence or

testimony when it was presented during the hearing. [DE 92 at 12.]  Indeed, the

24

opposite appears to be the case: the School cites to the record where the reports and related documents were, in fact, timely disclosed and admitted into evidence *by both Cooper and the school.* [DE 43, *See* A.R. 5229-5258, 5393-5623, 5766-5767, 4964-65.]  In either event, Cooper should have objected to whatever witnesses or testimony during the administrative hearing that she thought did not satisfy the five-day rule of disclosure.  To be arguing about this now, is a futile exercise (and one that she has waived) since the hearing already happened and was ruled upon by the IHO, without objection to the timeliness of disclosure.

Cooper's final due process argument is a minor one: she dislikes the fact that the School was permitted to re-call Dr. Steck to the stand several times during the hearing. But this runs counter to the basic point that due process hearings are "flexible." *Doyle*, 305 F.3d at 618.  It was therefore entirely within the IHO's discretion to permit this.

* * *

For all of these reasons, I find the IHO did not make a legal error, and giving due weight to his factual findings, as is appropriate since he was on the front lines of this dispute and heard all of the evidence, I cannot say I strongly disagree with his conclusions.  Therefore, the IHO's decision is affirmed in its entirety.  Count 1 of the complaint relating to the IDEA claim (and the Due Process claim embedded in it) will be dismissed with prejudice.

II.    **ADA (Count II)**

While the IDEA covers disabled students in the school environment, the ADA

and Section 504 of the Rehabilitation Act have a broader sweep; they "cover people with

disabilities of all ages, and do so both inside and outside of school." *Fry v. Napoleon*

*Cmty. Schs.*, 580 U.S. 154, 170 (2017); *Sellers v. Sch. Bd. Of the City of Manassas, Va.*, 141

F.3d 524, 528 (4th Cir. 1998).  Title II of the ADA forbids any public entity from

discriminating on the basis of disability and "requires a public entity to make

reasonable modifications to its policies, practices, or procedures to avoid such

discrimination." 42 U.S.C. § 12131 *et seq.*  Similarly, Section 504 of the Rehabilitation Act

requires that a public entity make "reasonable" modifications to existing practices,

including by offering support services, to "accommodate" disabled persons.  *Alexander*

*v. Choate*, 469 U.S. 287, 299-300 (1985).  ADA claims and claims under Section 504 are

analyzed under the same standards. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022).

I note that in analyzing the ADA claim, I need to revert back to "the ordinary

standard for summary judgment, not the special IDEA variant."  *Bd. of Educ. Of Twp.*

*High School Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007).  In addition, a hearing

officer's findings are not entitled to deference in an ADA claim, so I have carefully

reviewed the parties statement of material facts for this section. *Id.*

Under Title II of the ADA, to claim a public program or service violates the ADA,

the plaintiff has to establish: (1) he has a qualifying disability; (2) he is being denied the

benefits of services for which the public entity is responsible, or is otherwise

discriminated against by the public entity; and (3) the discrimination is by reason of his disability. *See Brown v. Meisner*, __ F.4th __, 2023 WL 5498739, at *2 (7th Cir. Aug. 25, 2023); *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018); *Hummel v. St. Joseph Cnty. Bd. Of Comm'rs*, 57 F.Supp.3d 902, 910 (N.D. Ind. 2014).  Put another way, as to the third element, M.D. has to prove that but for his disability, he would have received access to certain services or benefits that he was otherwise deprived of.  *H.P. v. Naperville Community School Dist. # 203,* 910 F.3d 957, 960 (7th Cir. 2018); *A.H. v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) ("We have consistently held the statutory language in both the Rehabilitation Act and the ADA requires proof of causation.").

Disability discrimination under the Rehabilitation Act and the ADA can be established in one of three different ways:  (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's denial of benefits disproportionately impacts disabled people. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (quoting *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)). While the Court in *Washington* qualified that it could not "accept the suggestion that liability under Title II of the Discrimination Act must be premised on an intent to discriminate on the basis of disability," 181 F.3d at 846-47, courts in our circuit *have* held it *is necessary* to show intentional discrimination in an ADA case in order to recover compensatory damages (as opposed to just injunctive relief).  *See Reed v. Columbia St.*

27

*Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) ("Compensatory damages are available under the Rehabilitation Act . . . but may be available only for claims of intentional discrimination."); *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014) ("We note that all circuits to consider the question have held that compensatory damages are only available for intentional discrimination" under the ADA and Rehab Act); *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014) ("Even if [a plaintiff] could show a violation of the ADA and/or Rehabilitation Act, he could not recover compensatory damages without showing intentional discrimination.").

It isn't clear to me under what ADA prong Cooper is proceeding—are plaintiffs claiming the School intentionally acted on the basis of M.D.'s disability and discriminated against him, or that the School refused to provide a reasonable accommodation (or both)?  In a way, it seems like Cooper must be claiming intentional discrimination because she seeks monetary damages on the ADA and Rehab Act claims. [Compl., DE 1 at 24.]  However, in her brief, Cooper only argues the School violated the ADA and Section 504 in four ways: (1) failing to provide M.D. with a licensed teacher; (2) refusing to permit modifications to a school curriculum because M.D. is on a Core 40 diploma track and refusing to allow him to switch to a non-Core 40 diploma track; (3) timely identifying M.D.'s educational needs; and (4) depriving M.D. of a FAPE. [DE 86 at 17.]  These arguments seem to fit more into the category of M.D. being denied a reasonable accommodation by the School.

Let's start with the assumption that M.D. is claiming intentional discrimination since she seeks compensatory damages under the ADA (although, frustratingly, Cooper has not provided any argument whatsoever to support this). The Seventh Circuit has held that "a plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference," which requires "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Lacy*, 897 F.3d at 863; *see also Doe v. McHenry Cnty. College*, No. 17 v. 4247, 2020 WL 5209834, at *3 (N.D. Ill. Sept. 1, 2020) (holding plaintiff can establish intentional discrimination by showing deliberate indifference in school setting); *Vargas v. Madison Metro. Sch. Dist.*, No. 18-cv-272-slc, 2019 WL 2173928, at *3 (W.D. Wis. May 20, 2019) (same); *see also C.B. v. Bd. of Educ. of City of Chicago, District 299*, 624 F.Supp.3d 898, 918-19 (N.D. Ill. 2022) (finding for a Section 504 discrimination claim, there must be a demonstration of bad faith or gross misjudgment).

Let's suppose Cooper's theory of liability under the ADA and Rehabilitation Act is legally sound (although Cooper provides the Court with no case law in support of that argument), Cooper has no proof of any *intentional* discrimination, and she has no evidence the School acted with deliberate indifference or any type of malice. The record in this case is replete with evidence that the School has been working with Cooper and M.D. since he moved back to Indiana and up to the present on issues of accommodating him in School. While their solutions were by no means perfect, and the parties have often disagreed on the proper course to take, there is also no evidence of purposeful

29

discrimination to support liability under the ADA.  As noted above, the Seventh Circuit

has "consistently held that the statutory language in both the Rehabilitation Act and the

ADA requires proof of causation."  *A.H.*, 881 F.3d at 593.  This means that "both statutes

prohibit discrimination against individuals 'by reason of' the disability, or 'on the basis

of' the disability," and this language requires the plaintiff to prove "that, 'but for' his

disability, he would have been able to access the services or benefits desired." *Id.* at 593

(citation omitted).

In *Stanek*, for example, the Court found a student stated a plausible claim under

the ADA where the student alleged *because of his autism* and the extra attention he

needed, "his teachers tried to push him out of their classes, refused to comply with the

IEP and even required him to work on group projects when his disability prevents him

from being able to work with peers." *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*,

783 F.3d 634, 641 (7th Cir. 2015). *Stanek* was before the court on a motion to dismiss

where allegations of intentional discrimination are permissible.  But, of course, at

summary judgment, evidence — not allegations — must be proffered. And I have been

presented with no evidence to suggest that the School had it in for M.D. *because of his

disability*.  Indeed, I have closely reviewed the entirety of M.D.'s 95 page statement of

genuine issues, and nothing in there would allow a reasonable jury to conclude that the

School intentionally discriminated against M.D. on the basis of his disability.

The Fourth Circuit came to the same conclusion in *Sellers by Sellers v. Sch. Bd. of

the City of Manassas, Virginia*, 141 F.3d 524, 528 (4th Cir. 1998).  In that case the court held

that even though claimants may of course state claims under both the IDEA and the

ADA, the proof required for both is not commensurate.  Here's what the court

concluded:

> [Plaintiffs] next argue that, even if they cannot recover
> compensatory and punitive damages under IDEA, such damages
> are recoverable for a violation of section 504 of the Rehabilitation
> Act.  They maintain that the defendants' failure both to identify
> [the student's] disability and to provide him with a free appropriate
> public education violated section 504 because it constituted
> discrimination against [the student] solely on the basis of his
> disability.  Because [Plaintiffs] merely reallege a violation of IDEA,
> and fail to allege facts sufficient to state a claim under section 504,
> we reject their argument. . . . They allege no facts which would
> suggest the defendants discriminated, i.e., that they acted with bad
> faith or gross misjudgment.  In similar cases involving allegations
> of a school district's failure to 'timely assess and diagnose' a child's
> disability, courts have been reluctant to find in mis-diagnoses the
> evidence of bath faith or gross misjudgment sufficient to support a
> discrimination claim under section 504.

*Id.* at 528-29.  Under this standard, the undisputed facts show that the School did not

discriminate intentionally against M.D.

Let's now assume Cooper is claiming violation of the ADA and Rehab Act based

upon the lack of reasonable accommodation.  This line of reasoning seems so

intertwined with M.D.'s claim for violation of the IDEA, that a review of the two

different regimes is necessary.  There is no doubt that the ADA and the IDEA are

separate vehicles, and that a person may sue under both—the procedural safeguards of

the IDEA "do[] not prevent a plaintiff from asserting claims under such laws even if . . .

those claims allege the denial of an appropriate public education (much as an IDEA

31

claim would).” *Fry*, 580 U.S. at 161.  But at the same time, there is an exhaustion provision establishing that when a plaintiff brings suit under the ADA, the Rehabilitation Act, or other similar laws, they must in certain circumstances—when “seeking relief that is also available under” the IDEA— first exhaust the IDEA’s administrative procedures.  *Id.*   In other words, no matter what a plaintiff calls a count in question, if the substance of the plaintiff’s claim really concerns the denial of a FAPE guaranteed by the IDEA, then the plaintiff must first comply with the administrative procedures unique to IDEA.

Of course, no one questions here whether Cooper exhausted her administrative remedies under the IDEA by filing a complaint and fully participating in the administrative hearing.  And the Supreme Court recently held that a suit “admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA’s administrative processes if the remedy a plaintiff seeks is not one IDEA provides.”  *Perez v. Sturgis Public Schs.*, 143 S. Ct. 859 (2023). The issue here isn’t exhaustion.  The issue *is* whether Cooper can rely solely on alleged IDEA violations in trying to avoid summary judgment on her ADA claim.

A brief review of how Cooper believes the ADA was violated shows that what she is really seeking is a FAPE.  Cooper specifically argues the School violated the ADA and Section 504 in four ways: (1) failing to provide M.D. with a licensed teacher; (2) refusing to permit modifications to a school curriculum because M.D. is on a Core 40 diploma track and refusing to allow him to switch to a non-Core 40 diploma track; (3)

timely identifying M.D.'s educational needs; and (4) depriving M.D. of a FAPE. [DE 86

at 17.] All of these violations certainly sound like allegations of the denial of a FAPE.

But as the Seventh Circuit has held, "something more than a bare violation of IDEA is

required to establish disability discrimination in an educational program." *Stanek*, 783 at

641; *see also Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1246

(10th Cir. 2009) ("the IDEA and the § 504 differ, and a denial [of a FAPE] under the

IDEA does not ineluctably establish a violation of § 504."); *CTL*, 743 F.3d at 529

(discussing differences between the ADA and IDEA).  At least one court in this circuit

found at summary judgment, after determining the school did not violate the IDEA in

fashioning a child's education, that because the plaintiff's claim for discrimination

under the Rehab Act was "based solely on allegations that [the school] failed to provide

the appropriate services to [the student]", the ADA claim also could not be sustained

and granted summary judgment on that count too.  *Tarah P. v. Bd. of Educ. of Fremont

Sch. Dist. 79*, No. 94 C 3896, 1995 WL 66283, at *4 (N.D. Ill. Feb. 15, 1995).

       To the extent M.D. is arguing that the School failed to provide reasonable

accommodations to M.D., most of the alleged failures were already discussed earlier in

this opinion, and even in the ADA context, I still do not believe any of the actions

asserted by Cooper are enough for a jury to determine that the School improperly

refused to provide a reasonable accommodation.  With respect to M.D.'s path for

graduation requirements, which was not addressed by the hearing officer, there is a

dispute of fact whether M.D.'s mother continued to seek a Core 40 diploma track for

M.D. later in high school. [DE 86-1 at ¶ 93.]  However, Cooper has provided no case law whatsoever in support of her argument that even if the School did refuse to permit a modified Core 40 curriculum at her request, such an action constitutes refusal of a reasonable accommodation.  M.D. merely cites to Dr. Steck's conclusion that down the road, M.D. *might* need to be on a different diploma track. [DE 86 at 19; DE 86-1 ¶ 159.]

"Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002).  As the party with the burden of proof at trial, Cooper must demonstrate that the School failed to provide a reasonable accommodation.  *Barfield v. Donahoe*, No. 13 C 1518, 2014 WL 4638635, at *3 (N.D. Ill. Sept. 17, 2014).  An accommodation is unreasonable if it imposes significant financial or administrative costs, or it fundamentally alters the nature of the program or service.  *Id.*  Lowering eligibility or qualifying requirements can be substantial modifications that are unreasonable.  *See A.H.*, 881 F.3d at 594.  In this case, the School claims the State of Indiana sets graduation requirements and the School is unable to limit or lower the amount of curriculum covered or tested in a required course. [DE 83 at 14.]  Cooper does not address this argument whatsoever in her response, and provides no case law or other reasoning for finding the alleged failure to permit a modified Core 40 curriculum or excuse M.D. from such curriculum constitutes a failure to provide a reasonable accommodation.  Therefore, summary judgment is granted in favor of the School on the ADA claim as well.

<u>**Conclusion**</u>

For the aforementioned reasons, the Motion to Permit Declaration and Documents filed by Plaintiffs [DE 87] is DENIED.  Defendant School City of Hammond's Motion to Strike Plaintiffs Reply concerning additional evidence [DE 98] is DENIED AS MOOT.  The Motion for Summary Judgment filed by Defendant School City of Hammond [DE 81] is GRANTED.  The Clerk is DIRECTED to enter judgment in favor of Defendant School City of Hammond and against Plaintiffs, affirming the determination of the hearing officer's opinion, and dismissing all of Plaintiffs' claims WITH PREJUDICE.  Finally, the Clerk is ORDERED to CLOSE this case.

**SO ORDERED**.

ENTERED: September 8, 2023

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

35